# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY SMITH,**

                  Plaintiff,

                                                    **Case No. 09-C-538**

       -vs-

**MEDICAL BENEFIT ADMINISTRATORS GROUP, Inc.,**

                  Defendant.

# DECISION AND ORDER

Jeffrey Smith requested pre-approval for gastric bypass surgery from the third-party administrator of his health insurance plan, Medical Benefit Administrators Inc. (doing business as "Auxiant"). Auxiant pre-approved the procedure; Smith went through with the surgery. After the surgery, Auxiant denied coverage. Smith brought this proposed class action seeking relief under ERISA. Auxiant moves to dismiss for failure to state a claim. For the reasons that follow, this motion is granted.

Smith alleges that Auxiant "routinely fails and refuses to make timely decisions with regard to Pre-Service Claims [in accordance with ERISA Claims Handling Regulations], and fails to identify possible grounds for denying Pre-Service Claims until *after* medical services have been provided, thereby leaving employees personally responsible to pay bills for medical services that were (or were believed to be) pre-approved by Auxiant." *See* 29 C.F.R. 2560.503-1(f)(2)(iii)(A) (plan administrator shall notify claimant of the plan's pre-service

benefit determination within 15 or 30 days). According to Smith, Auxiant routinely performs "a cursory review of Pre-Service Claims before preauthorizing those claims," only to have claims handlers conduct a more thorough review after medical services are provided.

Smith claims that Auxiant's approach to pre-service claims constitutes a breach of its fiduciary duties. *See* 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1109; 29 U.S.C. § 1104. Smith requests, in pertinent part, the following relief: (1) an order certifying this case as a class action;[1] (2) an "appropriate award of damages, restitution and/or other monetary relief, as allowed by law;" and (3) a permanent injunction enjoining Auxiant, its officers, directors, employees, agents, partners or representatives, successors and any and all persons acting in concert with Auxiant, from directly or indirectly engaging in the unlawful handling of pre-service claims as alleged in the complaint.

When deciding a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded facts and draw all permissible inferences in the plaintiff's favor. While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the complaint must "describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests," and "its allegations must actually *suggest* that the plaintiff

---

[1] The proposed class is defined as follows: "All participants or beneficiaries of employee health plans governed by ERISA, who sought pre-approval or preauthorization of medical services from Auxiant at least 15 days before those medical services were provided, and had their claims for reimbursement of charges for those medical services denied for reasons that Auxiant did not identify before the medical services were provided."

-2-

has a right to relief, by providing allegations that raise a right to relief above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

Importantly, Smith concedes (as he must) that he is *not* entitled to coverage for his surgery. Therefore, Smith cannot pursue a Section 502(a)(1) claim to recover benefits that are due to him under the terms of the plan. *See* § 1132(a)(1). Instead, Smith pursues relief under Section 502(a)(2), which allows a "participant, beneficiary or fiduciary" to bring a claim for "appropriate relief under section 1109 [section 409(a)] of this title." § 1132(a)(2). This section provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *any losses to the plan* resulting from such breach, and to *restore to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added).

Smith tries to dance around it, but what he wants is an award of damages (plus interest) to compensate him for the amount of money he was forced to spend out of pocket to finance his surgery. *See* Complaint, ¶ 33 (Auxiant's "unlawful practices have resulted in Plaintiff and other Class members sustaining monetary damages and other harm, for which they are entitled to reimbursement and other appropriate relief under ERISA"). However, Smith's concession that he is not entitled to benefits under the terms of the plan is fatal to his claim: "the relevant text of ERISA, the structure of the entire statute, and its legislative

-3-

Case 2:09-cv-00538-RTR    Filed 10/26/09    Page 3 of 9    Document 10

history all support the conclusion that in § 409(a) Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985). Smith's claim is foreclosed by the ruling in *Russell*. *See Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) ("Not that monetary relief is excluded, but it must be relief to which the plan documents themselves entitle the participant. The statute authorizes suits for damages, just not for damages separate from those benefits; so only 'extracontractual damages are prohibited'").

In the face of this relatively clear precedent, Smith argues that *Russell* was overruled or rendered obsolete by the Supreme Court's recent decision in *LaRue v. DeWolff, Boberg & Ass., Inc.*, 552 U.S. 248, 125 S. Ct. 1020 (2008). In *LaRue*, the Court considered whether Section 502(a)(2) authorizes a participant in a defined contribution plan to sue a fiduciary whose alleged misconduct impaired the value of plan assets in the participant's individual account. The Court held that such a claim was allowed by ERISA because it relates to the "proper management, administration, and investment of fund assets" with an eye towards ensuring that "the benefits authorized by the plan" are ultimately paid to participants and beneficiaries. *LaRue*, 125 S. Ct. at 1024 (citing § 409(a)). The Court distinguished this claim from the claim in *Russell*, where the plaintiff "received all of the benefits to which she was contractually entitled, but sought consequential damages arising from a delay in processing her claim." *Id.* Smith's claim is unrelated to the proper management of fund assets, so it is more akin to the claim in *Russell*, not the claim in *LaRue*.

-4-

Smith persists by observing that in *LaRue*, the Court clarified certain language in *Russell* based upon the distinction between defined benefit plans and defined contribution plans. "*Russell*'s emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape of employee benefit plans. That landscape has changed. Defined contribution plans dominate the retirement plan scene today. In contrast, when ERISA was enacted, and when *Russell* was decided, 'the [defined benefit] plan was the norm of American pension practice.'" 128 S. Ct. at 1025. The Court was referring to the following language in *Russell*: "a fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the *entire plan*, rather than with the rights of an individual beneficiary." 473 U.S. at 142 (emphasis added). The Court explained that "[t]he 'entire plan' language in *Russell* speaks to the impact of § 409 on plans that pay defined benefits. Misconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan. . . . For defined contribution plans, however, fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *LaRue* at 1025.

Smith seizes on the Court's discussion of the changing landscape of retirement benefit plans, but the distinction between defined benefit plans and defined contribution plans is irrelevant in the context of a group health insurance plan. *See Estate of Spinner v. Anthem Health Plans of Virginia*, 589 F. Supp. 2d 738, 745-46 (W.D. Va. 2008) (the "limited

-5-

Case 2:09-cv-00538-RTR    Filed 10/26/09    Page 5 of 9    Document 10

exception" in *LaRue* "has no bearing on the instant case" because "*LaRue* involved a defined contribution pension plan, not a group health insurance plan"). Smith also argues that the holding in *LaRue* shifts the emphasis from plan injuries to individual injuries. This argument misrepresents the holding in *LaRue*: "although § 502(a)(2) *does not provide a remedy for individual injuries distinct from plan injuries*, that provision does authorize recovery for fiduciary breaches that *impair the value of plan assets* in a participant's individual account." *LaRue* at 1026 (emphasis added). While the remedy in *LaRue* enured to the individual plaintiff, there still must be a contractual entitlement under the plan. *See Harzewski* at 804. There is none in the instant case. *Russell* is still good law and it precludes Smith's claim for extracontractual relief.

Smith also argues that he can pursue his claim for extracontractual relief pursuant to Section 502(a)(3). This provision allows a civil action brought to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). It is a "catchall . . . [that] offer[s] appropriate equitable relief for injuries caused by violations that section 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). However, just like under Section 502(a)(2) (and Section 409(a)), extracontractual compensatory damages are also unavailable under Section 502(a)(3). *See Harsch v. Eisenberg*, 956 F.2d 651, 658 (7th Cir. 1992). "If anything, section 502(a)(3) may provide even less support for an award of compensatory damages than does section 409(a)

-6-

since only the latter provides for 'other remedial relief' in addition to 'appropriate equitable relief.'" *Id.* at 657.

Smith points to *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009) in support of his claim for extracontractual relief under Section 502(a)(3). In *Mondry*, the plaintiff was advised by the plan administrator that her son's speech therapy was not covered, but later discovered that she was entitled to coverage. The court rejected most of the plaintiff's claims, but held that she had a viable claim against the plan administrator for the "lost time value of money she was forced to expend on [her son's] speech therapy until at last she obtained copies of the [plan documents] and was able to prevail" in her appeal. *Id.* at 806. This was a form of restitution that fell within Section 502(a)(3)'s allowance for "other appropriate equitable relief." Unfortunately for Smith, *Mondry* does nothing to disturb the clear holding in *Harsch*, relying on *Russell*, that extracontractual relief is unavailable pursuant to Section 502(a)(3). Smith's claim is nothing like the viable claim in *Mondry* because it is not based upon the improper denial or withholding of a contractual entitlement.

Finally, Smith argues that his claim should be allowed to proceed because he is also seeking injunctive or equitable relief. But to what end? Smith requests restitution, but as an equitable remedy, restitution is premised upon the theory of unjust enrichment. Smith is not entitled to restitution because he is not entitled to benefits under the Plan. *See Livick v. Gillette Co.*, 492 F. Supp. 2d 1, 11 (D. Mass. 2007) (restitution unavailable because errors were "errors in estimation and reporting, not representations that unjustly enriched Defendants by depriving Plaintiff of specific funds to which he was entitled").

Ultimately, Smith's general request for injunctive relief is an improper attempt to obtain extracontractual relief. Not only does Smith want an injunction forcing Auxiant to follow the relevant claim-handling regulations, he wants an injunction precluding the denial of benefits if the denial is for reasons that were not identified in the pre-service process. *See* Complaint, ¶ 12 (defining proposed class as those who sought pre-approval and had their claims for reimbursement "denied for reasons that Auxiant did not identify before the medical services were provided"). Accepting as true the proposition that Auxiant acted as a fiduciary and breached its fiduciary duties, Smith and those in the proposed class are not entitled to this type of relief under ERISA. In effect, Smith would have the Court enter an order varying the terms of the plan documents in the event that Auxiant pre-approved a procedure or failed to follow the relevant pre-authorization regulations. This is a convoluted form of extracontractual relief, but it is extracontractual nonetheless. Even if Smith was harmed by his reliance on Auxiant's pre-authorization, he still received the proper amount due under the plan – nothing. "This result may seem harsh, but it is consistent with the ERISA policy of ensuring that benefits are paid consistently and predictably in accordance with a written plan." *Livick*, 492 F. Supp. 2d at 12.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Auxiant's motion to dismiss [D. 4] is **GRANTED**; and

2. This matter is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 26th day of October, 2009.

**SO ORDERED,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**